**RECORD NO. 14-4355**

In The

# United States Court Of Appeals
## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

### JOSE FRANCISCO PINA,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT STATESVILLE**

————————

**BRIEF OF APPELLANT**

————————

**Samuel B. Winthrop**
**WINTHROP & WINTHROP**
**112 Court Street**
**P. O. Box 964**
**Statesville, NC  28687**
**(704) 872-9544**
**(704) 872-7712**
**swinthrop@bellsouth.net**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF ISSUES ......................................................................1

STATEMENT OF THE CASE..................................................................1

                Statement of Facts..........................................................................4

SUMMARY OF ARGUMENTS ..............................................................9

ARGUMENTS.........................................................................................10

I.       THE DISTRICT COURT ERRED AS A MATTER OF LAW, OR IN THE ALTERNATIVE, COMMITTED PLAIN ERROR, BY APPLYING AN IMPROPER TWO-LEVEL ENHANCEMENT FOR MAINTAINING A PREMISES FOR THE PURPOSE OF MANUFACTURING OR DISTRIBUTING A CONTROLLED SUBSTANCE UNDER U.S.S.G. § 2D1.1(B)(12) WHEN THE RECORD CLEARLY SHOWS THAT THE APPELLANT MR. PINA HAS NO PRIOR CRIMINAL HISTORY, HIS DRUG INVOLVEMENT BEGAN STRICTLY AND SOLELY WITH CO-CONSPIRATOR, MR. SALDANA AND THAT BOTH THE DWELLING OCCUPIED BY APPELLANT MR. PINA AND AN ADJACENT DWELLING OCCUPIED BY MR. SALDANA WERE OWNED BY MR. SALDANA..........................10

          A.     Standard of Review ................................................10

i

B.    The two-level enhancement in Mr. Pina's base level offense for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2d1.1(b)(12) constitutes error as a matter of law, or plain error, because the Government failed to establish the required nexus Mr. Pina's control and maintenance of the dwelling as opposed to control and maintenance of the dwelling by co-defendant Saldana. ..........10

II.    MR. PINA SHOULD BE GRANTED A NEW SENTENCING HEARING BECAUSE THE SENTENCING COURT DID NOT TAKE INTO ACCOUNT THE TWO-LEVEL ADVISORY GUIDELINE REDUCTION FOR DEFENDANTS WITH DRUG RELATED CHARGES PURSUANT TO U.S.S.G. § 2D1.1 WHICH IS EFFECTIVE NOVEMBER 2015. ...................................13

CONCLUSION .......................................................................................14

STATEMENT REGARDING ORAL ARGUMENT ............................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**CASES:**

*Anders vs. California*,
    386 U.S. 738, 87 S. Ct. 1396 (1967) ........................................................1, 14

*United States v. Miller*,
    698 F.3d 699 (8th Cir. 2012),
    *cert. denied*, 133 S. Ct. 1296 (2013)............................................................12

*United States v. Rouse*,
    362 F.3d 256 (4th Cir. 2004) ......................................................................10

*United States v. Sanchez*,
    710 F.3d 724 (7th Cir. 2013) ......................................................................12

*United States v. Strieper*,
    666 F.3d 288 (4th Cir. 2012) ......................................................................10

**STATUTES:**

18 U.S.C. § 922(g)(5) ..............................................................................................2

18 U.S.C. § 924(c) ..........................................................................................2, 4, 8

18 U.S.C. § 3231 ....................................................................................................1

18 U.S.C. § 3553(a) ................................................................................................4

21 U.S.C. § 841 .................................................................................................4, 8

21 U.S.C. § 841(b)(1)(A) ......................................................................................2

21 U.S.C. § 846 ...........................................................................................1, 2, 4

28 U.S.C. § 1291 ...................................................................................................1

**<u>RULE</u>:**

Fed. R. Crim. P. 11.................................................................................................1

**<u>SENTENCING GUIDELINES</u>:**

U.S.S.G. § 2D1.1......................................................................................11, 13, 14

U.S.S.G. § 2D1.1(b)(12) .................................................................. *passim*

U.S.S.G. § 5K1.1..............................................................................................3, 13

## STATEMENT OF JURISDICTION

This is a timely appeal of a final judgment in a criminal case. The District Court had jurisdiction pursuant to 21 U.S.C. § 846, as the indictment charged the commission of offense in violation of these statutes. Jurisdiction is vested in the United States District Court for the Western District of North Carolina pursuant to 18 U.S.C. § 3231. Jurisdiction of the Court of Appeals is founded upon 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

After a thorough review pursuant of the Presentence Investigation Report, transcript of the Plea and Rule 11 hearing and the transcript of the sentencing hearing, the applicable statutes and rules and the applicable case law in light of *Anders vs. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), Counsel, as an officer of the Court, has determined that the only meritorious issues for appeal are whether the District Court erred as matter of law by imposing a sentence based on calculations that include an improper two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12).

## STATEMENT OF THE CASE

Jose Francisco Jimenez Pina a/k/a Jose Jimenez Mancilla ("Appellant" or "Mr. Pina") was charged in an indictment returned on December 13, 2012, with the following three counts:

1

- Count One 1: Conspiracy to distribute and possess with intent to distribute controlled substances, that is, a mix and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title, 21 U.S.C., Sections 846 and 841(b)(1)(A);

- Count 2: During and in relation to a drug trafficking crime, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a violation of Title 21 United States Code, Section 846, as charged in Count One (1), did knowingly and unlawfully use and carry one or more firearms, and in furtherance of such drug trafficking crime, did possess said firearms, and did aid and abet the same, all in violation of Title 18, United States Code, Section 924(c);

- Count 3: Being an alien, that is, illegally and unlawfully in the United States, did knowingly possess, in and affecting commerce, one or more firearms, and ammunition and did aid and abet the same, all in violation of Title 18, United States Code, Section 922(g)(5).

(Indictment pp. 1-2)

On February 20, 2013, Mr. Pina appeared before the Honorable David S. Cayer, Magistrate Judge, and pled guilty to Counts 1 and Counts 2 of the Bill of Indictment pursuant to a written Plea Agreement.  (Plea Agmt. 1)  On April 22, 2014, Mr. Pina

was sentenced by the Honorable Richard L. Voorhees. The Court found the presentence report credible and reliable for purposes of sentencing and accurate in determining the Guidelines at 37 and Criminal History at Category 1 and placing Mr. Pina in a Guideline Category of 210 - 262 months for Count 1 and 60 months consecutive for Count 2. However, the Government made a motion for downward departure pursuant to U.S.S.G. § 5K1.1 based on Mr. Pina's cooperation. (Sent. Tp. 6, 11-12) The Government submitted that a 28 percent reduction was sufficient but not greater than necessary in this case. (Sent. Tp. 8) Mr. Pina's counsel conceded that the Government had appropriately considered Mr. Pina's cooperation when recommending the downward departure (Sent. Tp. 9), and asked the Court to consider the fact that Mr. Pina had no prior record and requested the Court in its discretion consider instituting a two-level reduction across the board on drug sentencing, which was anticipated to become effective within the upcoming months of 2014. (Sent. Tp. 9-10) Mr. Pina apologized for his conduct in the drug-related matter, stating he had not previously known anything about drugs until he became involved with a co-conspirator. (Sent. Tp. 10)

The Honorable Richard L. Voorhees granted the Government's motion for a downward departure and found Mr. Pina's cooperation to be adequate and that it had placed Mr. Pina at risk. He acknowledged Mr. Pina's apology and noted that Mr. Pina's drug involvement began "strictly and solely" with co-defendant, Mr. Saldana,

and otherwise Mr. Pina did not have any antecedence in this prior history. (Sent. Tp. 11-12) The Court noted that the Government did not move under 18 U.S.C. § 3553(a). (Sent. Tp. 12)

The Honorable Richard L. Voorhees therefore departed from Level 37 on Court One (1) to Level 31, Category I, and imposed a mandatory minimum sentence of 120 months on Count 1, and a mandatory minimum of 60 months consecutive on Count 2, to be served consecutively for a total of 180 months.

The Judgment was signed by the Honorable Richard L. Voorhees on April 29, 2014. (Jdgmt. 1), and the judgment was filed on April 30, 2014. Count Three (3) of the Indictment was dismissed (*Id.*) Appellant timely filed his Notice of Appeal to this Honorable Court on April 28, 2014. (NOA 1)

**<u>Statement of Facts</u>**

Mr. Pina is one of two defendants named in a three-count bill of indictment filed on December 13, 2012, charging conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. 846 and 841. Mr. Pina stipulated to a drug quantity of at least 1,500 grams. (Plea Agmt. 2) Mr. Pina was also charged in Count 2 of the Indictment with possession of a firearm in relation to drug trafficking in violation of 18 U.S.C. 924(c).

The Presentence Report summarized the alleged crimes to which Mr. Pina plead guilty as follows: Multiple federal agencies initiated an investigation in August 2012

4

into the drug trafficking and money laundering activities of co-defendant Salenda, which was identified as a significant methamphetamine source of supply in the Western District of North Carolina. A confidential source identified persons supplied with methamphatamines by Saldana. During the execution of a search warrant in Virginia at a residence, a drug buyer identified Mr. Pina as the source of her weekly purchases of methamphetamines. The drug buyer stated she purchased methamphetamines from Mr. Pina of certain quantities and Mr. Pina distributed methamphetamines under the direction of Saldana. The buyer also stated she regularly purchased certain quantities of methamphetamines from Mr. Saldana for a three (3) year period.

On October 30, 2012, authorities initiated an undercover operation wherein a controlled substance purchase of one (1) ounce of methamphetamine "ice" was purchased from Mr. Pina for $2,800.00. A subsequent undercover purchase of one (1) ounce of methamphetamine "ice" was made from Mr. Pina on November 7, 2012 for $3,000.00. The second purchase occurred in the driveway of 178 Ervin Houck Drive in West Jefferson, North Carolina. Authorities later intercepted a United States Postal Service ground package addressed to Mr. Pina's son, Humberto Pina, at 178 Ervin Houck Drive and a K-9 sniff revealed the presence of controlled substances. On December 11, 2012, a confidential informant met Saldana and discussed how Saldana used Mr. Pina to sell methamphetamines for him and that Mr. Pina had changed his

5

telephone number because things were "too hot."  Saldana agreed to have Mr. Pina call the confidential source.

On December 12, 2012, authorities executed two federal search warrants on the residence of Saldana located at 148 Ervin Houck Drive in West Jefferson, North Carolina, and on the residence of Mr. Pina located at 178 Ervin Houck Drive in West Jefferson, North Carolina.  A search of Mr. Pina's residence and outbuilding revealed firearms, numerous assorted ammunition, multiple cellular telephones, digital and manual scales, $1,915.00 in U.S. currency located in Mr. Pina's wallet, $1,003.00 in U.S. currency located in his son Jose Humberto Jimenez Pina's wallet, $2,000.00 in U.S. currency  wrapped in plastic hidden in a shop vacuum, $320.00 in U.S. currency located in a shoe, black electrical tape, rolls of clear plastic wrap, two ledgers, black piece of PVC pipe with electrical tape across the ends (containing assorted prescription pain pills, plastic wrappings, smoking pipes, and a clear plastic bag containing green vegetable material) and miscellaneous documents.

In an interview, Saldana confirmed he was the owner of the residences located at 148 and 178 Ervin Houck Drive.  Mr. Pina admitted he had been living in the residence at 178 Ervin Houck Drive for four (4) to five (5) months and he rented the residence from Saldana.  Mr. Pina denied selling drugs or having knowledge of the distribution of drugs.  Mr. Pina's son, Jose Humberto Jimenez Pina, was interviewed and confirmed that he and his father moved into 178 Ervin Houck Drive three (3) to four

6

(4) months prior to his father's arrest. The son stated that he and his father split the rent.

Mr. Pina's son admitted he owned one firearm – the Calwestco, Inc., J22, .22 caliber pistol (serial number 486206) but denied ownership of any other of the firearms located in the residence or the ammunition. Mr. Pina's son advised that his father had access to the closet where the other firearms were located. Mr. Pina's son admitted that he was aware that his father was distributing drugs for Saldana and that he believed his father began distributing drugs for Saldana approximately eight (8) months prior to the interview. He advised that on approximately four (4) different occasions he had observed his father sitting at the kitchen table with round balls covered with electrical tape and on one occasion observed his father weighing the black balls. He stated that he had some scales in his room to weigh marijuana, but that his father used different scales to weigh the black balls. He described the black balls as smaller than a baseball as but larger than a golf ball. Mr. Pina's son also described occasions when he drove his father to meet individuals and described one occasion when he observed his father give a person one of the "black balls." He admitted he was aware his father was selling drugs because he observed transactions and he also overheard his father talking to Saldana and other individuals about distribution of drugs.

Another individual, Bobby Giles Shore, admitted that Saldana had introduced him to Mr. Pina, and Saldana told Shore that Mr. Pina would be taking care of Shore in Saldana's absence while Saldana was traveling back and forth to Mexico. Shore usually received methamphetamine from Pina on consignment. Shore received methamphetamine from Pina and Saldana for $2,800.00 per ounce and then distributed it to his customers for $150.00 per gram. Shore described the volume and frequency of purchases and stated that one occasion he traveled to Saldana's residence to pick up the drugs.

This is an appeal from a guilty plea in which the Appellant, Mr. Pina, plead guilty to a Section 841 drug count and a Section 924(c) firearm count. He received a sentence of the mandatory minimum 10 years for the Section 841 offense and a sentence of the mandatory/minimum 5 years, consecutive, for the firearm offense. (Jdgmt. 2)

The Guideline ranges of punishment to which Mr. Pina plead guilty was a Level 37, Category I, and he stipulated to a drug quantity of at least 1,500 grams. The Presentence Report statutory range was not less than 10 years or more than life for Count 1, and minimum of 5 years, maximum of life for Count 2. On motion of the Government, Mr. Pina received a downward departure for cooperation to Level 31, Category I on Count 1 of the Indictment. Mr. Pina received a two-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(12), for maintaining a premises for the purpose of

manufacturing or distributing a controlled substance. Absent the two-level enhancement, the total offense level for Mr. Pina would have been Level 35, Category I, instead of Level 37. With the downward departure upon motion of the Government, Mr. Pina's total offense level could have been reduced two levels, to a Level 29, Category I.

## SUMMARY OF ARGUMENTS

This appeal follows. The Appellant, Mr. Pina, requests that this Court vacate his sentence and remand for resentencing because the District Court imposed sentence based on improper two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. 2D1.1(b)(12). The record clearly shows that Mr. Pina has no prior criminal history, and Mr. Pina's drug involvement began strictly and solely with co-conspirator, Mr. Saldana, and otherwise he did not have any antecedence in this prior history. The evidence is clear that the dwelling where Mr. Pina lived was owned and controlled by co-defendant Saldana and any drug activity was *not significant* but rather incidental.

## ARGUMENTS

I.  **THE DISTRICT COURT ERRED AS A MATTER OF LAW, OR IN THE ALTERNATIVE, COMMITTED PLAIN ERROR, BY APPLYING AN IMPROPER TWO-LEVEL ENHANCEMENT FOR MAINTAINING A PREMISES FOR THE PURPOSE OF MANUFACTURING OR DISTRIBUTING A CONTROLLED SUBSTANCE UNDER U.S.S.G. § 2D1.1(B)(12) WHEN THE RECORD CLEARLY SHOWS THAT THE APPELLANT MR. PINA HAS NO PRIOR CRIMINAL HISTORY, HIS DRUG INVOLVEMENT BEGAN STRICTLY AND SOLELY WITH CO-CONSPIRATOR, MR. SALDANA AND THAT BOTH THE DWELLING OCCUPIED BY APPELLANT MR. PINA AND AN ADJACENT DWELLING OCCUPPIED BY MR. SALDANA WERE OWNED BY MR. SALDANA.**

A.  **Standard of Review**

This Court reviews the lower court's application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012). When a defendant does not raise an issue in the District Court, review is for plain error. *United States v. Rouse*, 362 F.3d 256, 260 (4th Cir. 2004).

B.  **The two-level enhancement in Mr. Pina's base level offense for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12) constitutes error as a matter of law, or plain error, because the Government failed to establish the required nexus Mr. Pina's control and maintenance of the dwelling as opposed to control and maintenance of the dwelling by co-defendant Saldana.**

U.S.S.G. § 2D1.1(b)(12) provides that "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the sentence] by 2 levels." According to the Guidelines commentary, "[a]mong the factors

the court should consider in determining whether the defendant maintained the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises were maintained, but must be one of the defendant's primary or principal uses for the premises." *Id.*

In paragraph 36 of the Presentence Report, the offense level was increased by 2 levels based on a finding that Mr. Pina maintained a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). (PSR 9)  The two-level enhancement is factually inapplicable and wholly unwarranted, and constitutes error as a matter of law or plain error.

While the facts in the PSR submitted by the Government tend to show Mr. Pina "rented" the premises and had resided there approximately four (4) or five (5) months, the PSR fails to establish Mr. Pina *controlled access to, or activities at, the premises*. In fact, the totality of the facts and circumstances stated in the PSR indicated that co-defendant Saldana owned the premises and controlled access to, or activities at, the premises.  All factors, including the sentencing judge's findings, indicate that co-defendant Saldana was in control of all drug distribution activities (PSR 5) and that Mr. Pina's drug involvement "began *strictly and solely"* (emphasis added) with co-

11

defendant, Mr. Saldana, and "otherwise he did not have any antecedence in this prior history." (Sent. Tp. 11-12)

Moreover, recent federal cases demonstrate that the two-level enhancement is appropriate only where *substantial drug* activity occurred on the premises and such activity was not merely collateral use. *See United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012) (holding that enhancement applies "when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question"), *cert. denied*, 133 S. Ct. 1296 (2013); *United States v. Sanchez*, 710 F.3d 724 (7th Cir. 2013) (noting that "enhancement clearly contemplates that premises can have more than one principal use . . . the proper inquiry is whether the drug transactions were a second primary use of the premises or were instead merely a collateral use"), *petition for cert. filed* (June 3, 2013).

The evidence of drug activity at the premises – 178 Ervin Houck Drive -- is at most *incidental* or *collateral*. There is no evidence presented in the PSR of any drug transaction occurring at the residence of this defendant at 178 Ervin Houck Drive. At best there is one allegation that one transaction occurred in the driveway of 178 Ervin Houck Drive. Further, there was no evidence of any delivery of drugs to this Appellant, Mr. Pina, at 178 Ervin Houck Drive.

In summary, there is no proof whatsoever presented by the Government that Mr. Pina *controlled access to, or activities at, the premises* – in fact, all facts tend to show

12

Mr. Pina acted under the direction of Saldana who owned the premises. Moreover, any inference that drug activity occurring at the premises clearly shows such activity to be merely incidental or collateral use of the property controlled by co-defendant Saldana or activity engaged in by Mr. Pina's son.

Accordingly, the District Court should not have imposed the two-level enhancement for maintaining a premises and should have imposed a lesser sentence under a total offense level of 35.

The District Court's sentencing error resulted in a prison term of greater length for Appellant Mr. Pina than it otherwise would have been imposed had the two-level enhancement for maintaining a dwelling not been erroneously applied, taking into account the Government's stated position pursuant to its' motion for downward departure as set out in U.S.S.G. § 5K1.1 that Mr. Pina receive a reduction of no less than 28%.

## II.    MR. PINA SHOULD BE GRANTED A NEW SENTENCING HEARING BECAUSE THE SENTENCING COURT DID NOT TAKE INTO ACCOUNT THE TWO-LEVEL ADVISORY GUIDELINE REDUCTION FOR DEFENDANTS WITH DRUG RELATED CHARGES PURSUANT TO U.S.S.G. § 2D1.1 WHICH IS  EFFECTIVE NOVEMBER 2015.

Under the Presentence Investigation Report, Mr. Pina's base offense level for count 1 was level 37 (210-262 months).  Mr. Pina argued that, in granting the Government's motion for a downward departure and in order to receive a 28% level cut for his cooperation, the sentencing court should take into consideration the new

13

two-level reduction which was approved in July 2014 to be retroactive for drug-related trafficking offenses.  A two-level reduction applicable under the amended Sentencing Guidelines would reduce Mr. Pina's base offense level to 35 (168-210 months). Further, because (as argued above) the two-level enhancement for maintaining a dwelling is factually inapplicable, Mr. Pina's base level offense for count 1 should have been no more than level 33, category 1.  Under the appropriate base level offense of 33, Mr. Pina would serve no more than 135 to 168 months, and given the Government's stated position that Mr. Pina merited a downward departure based on his substantial assistance of at least 28%, then the defendant should be granted a new sentencing hearing to determine an appropriate sentence in light of Mr. Pina's argument as set out above, his cooperation, and the new retroactive policy pertaining to U.S.S.G. § 2D1.1.

## CONCLUSION

In accordance with the requirements of *Anders v. California*, 386 U.S. 738 (1967), counsel for Appellant has reviewed the facts and law applicable to the case.  It is counsel's opinion that there are no legal issues not properly dealt with in the sentencing hearing and that there are no grounds for an appeal of this case to the Court of Appeals.  A copy of this Brief has been served on Appellant.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellant respectfully asserts that the issues raised in this Brief have

been fully developed.

WINTHROP AND WINTHROP

<u>/s/ SAMUEL B. WINTHROP</u>
SAMUEL B. WINTHROP
P.O. Box 964 (Zip - 28687)
112 Court Street (Zip - 28677)
Statesville, North Carolina
Telephone:  (704) 872-9544
Facsimile:  (704) 872-7712
swinthrop@bellsouth.net

*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>3,321</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u> /s/ Samuel B. Winthrop          </u>
Samuel B. Winthrop

Dated: October 21, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 21, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE
>   UNITED STATES ATTORNEY
> United States Courthouse
> 100 Otis Street
> Room 233
> Asheville, NC  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that one copy of the brief was mailed to the Defendant at his last known address of:

> Jose Francisco Pina #37159180
> FDC Oakdale
> P.O. Box 5010
> Oakdale, LA  71463

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Karen R. Taylor
> Karen R. Taylor
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA  23219